SUMMERS, Justice.-
Plaintiffs Lawrence Paul Turner and Paul 'Abraham instituted suit on October 19, 1965 against W. D. Ewing, Callender Auto Rental and Fidelity General Insurl anee Company to recover damages arising out of an automobile collision which occurred on May 7, 1965 at the intersection of Jackson Avenue and Rousseau Street in the city of New Orleans. As a result of the collision, Turner incurred personal injuries and Abraham’s automobile was damaged. Plaintiffs alleged that Turner was driving Abraham’s car and that defendant Ewing had rented the automobile he was driving from Callender. Plaintiffs further alleged that Fidelity insured Cal-lender for personal injuries and property damage arising out of the negligent operation of their vehicles.
An answer was filed to this petition on January 3, 1966 by counsel for Fidelity on behalf of all defendants. Later, counsel for Fidelity and Callender withdrew as counsel for Ewing, informing him that there was no coverage under Fidelity’s policy issued to Callender for the automobile Ewing was driving when the collision and damage occurred. An amended answer reflecting this position was filed on December 7, 1966. Five months later, on May 4, 1967, Ewing answered plaintiffs’ petition separately; and, at the same time, he filed a third party petition making Callender and Fidelity defendants asserting that they were estopped to deny coverage and that they should answer to him for any amount he was required to pay plaintiffs.
It was stipulated at the trial on November 21, 1967 that the proximate causé of *664 the collision and damage was the negligence of Ewing in failing to stop at a stop sign. Judgment was accordingly rendered by the trial court in favor of plaintiffs against Ewing, Callender and Fidelity, jointly and in solido, as prayed for. Ewing was awarded judgment against Callender and Fidelity on his third party demand.
Defendants Ewing, Callender and Fidelity appealed to the Fourth Circuit where the judgment in favor of the plaintiff Turner against all defendants for his personal injuries was amended to cast only Ewing. After reduction of the quantum, the judgment in favor of Abraham for damage to his automobile was likewise amended to cast only Ewing. The judgment in favor of plaintiffs was reversed insofar as Callender and Fidelity were concerned, and the plaintiffs’ claims against them were rejected.
Ewing’s recovery under his third party claim against Callender and Fidelity was affirmed as to Callender, but reversed as to Fidelity, the third party claim against Fidelity being rejected. 220 So.2d 518. We granted certiorari on Ewing’s application. 254 La. 277, 223 So.2d 406. His complaint is now directed solely at that portion of the Court of Appeal judgment rejecting his third party claim against Fidelity.
These are the facts which are germane to the issues of .the case:
Ewing, a Naval Officer, flew into Cal-lender Field, Belle Chasse, Louisiana, on May 6, 1965. The next morning he rented an automobile from Callender Auto Rental. He signed a standard rental form and, in connection therewith, purchased liability insurance coverage on the rented automobile, paying an extra dollar for the insurance. That same afternoon he was involved in the accident at the intersection of Jackson Avenue and Rousseau Street in New Orleans with plaintiff Turner who was driving Abraham’s automobile. Turner incurred personal injuries, and Abraham’s automobile was damaged.
After the collision Ewing called the police, the Federal authorities and Arthur O. Cope, the manager of Callender Auto Rental. In the phone conversation with Cope, Ewing was assured that the rented automobile was covered by insurance; and, when Ewing returned the vehicle; Cope reassured him in this regard. That afternoon Ewing departed the air base in keeping with his orders.
Cope reported the facts of the accident to Forest Pendleton, Callender’s insurance agent who had placed the insurance with Fidelity.
While on duty in Georgia in October 1965, Ewing was served with a copy of plaintiff’s petition by the Secretary of State. As a result he telephoned Cope from Georgia informing him that he had been served with a copy of the petition. Again *666 he was assured that he had insurance coverage on the accident. He was also informed that Pendleton was the insurance agent. To verify this information, Ewing called Pendleton, who substantiated Cope’s statements, revealed that Fidelity was the insurer and referred Ewing to Fidelity’s attorneys. When Ewing called Fidelity’s attorney he was told to send the suit papers for examination, which he did. A week later on November 3, 1965, Ewing called Fidelity’s attorney again, and the latter confirmed coverage and advised Ewing he would be defended in the action.
As a result of these developments, Ewing apparently became concerned and notified his own automobile public liability insurer, United Services Automobile Association. United Services employed Calvin Hoppmeyer, a New Orleans claim representative, who consulted with Fidelity’s attorney. He was advised that the limits of Fidelity’s policy were more than adequate to cover the case and to protect Ewing.
On January 3, 1966 Fidelity’s attorneys filed an answer on behalf of Ewing, Cal-lender and Fidelity, in which it was alleged that Fidelity issued a policy of liability insurance to Callender insuring Callender against “certain liabilities as specified under the terms, coverages, conditions, limitations and exclusions of the policy.” Fidelity specifically pleaded the policy as the best evidence of its contents. Thereafter, at monthly intervals, Hoppmeyer consulted with Fidelity’s attorney, and as late as November 1966 he was assured that Fidelity’s attorney was working on the case and representing Ewing with Cab-lender and Fidelity.
Finally, Fidelity decided its policy did not afford coverage, and it withdrew its defense of Ewing. In keeping with this change of position, Fidelity amended its answer on December 7, 1966, still admitting the issuance of a policy to Callender insuring “against certain legal liabilities as specified under the terms, coverage, conditions, limitations and exclusions of the policy,” and specifically pleading the policy as the best evidence of its contents.
Ewing’s third party petition, filed sometime later in May 1967, asserts liability on the part of Callender for collecting a charge to furnish automobile public liability insurance and failing to do so. Liability is also alleged on the part of Fidelity for leading Ewing to believe that he had insurance coverage from October 1965 tp November 1966 and then denying the coverage to Ewing’s prejudice.
At the trial of the case on November 21, 1967, Fidelity sought to introduce what it termed a “certified copy” of the policy upon which it relied to exclude coverage, at which time Ewing’s counsel objected to the introduction of any but the original policy. The objection was sustained with leave granted to Fidelity’s counsel to produce the original later. At the conclusion of the trial. *668 however, without the policy having been introduced in evidence, the judge rendered judgment from the bench in favor of plaintiffs against Ewing, Callender and Fidelity jointly and in solido and in favor of Ewing on the third party demand agáinst Callender and Fidelity. The original of the policy was never produced by Callender or Fidelity, nor did Ewing’s counsel take steps to compel its production prior to or during the trial.
Ewing is contending that he has proved coverage under Fidelity’s policy by the allegation made by Fidelity in its answer, by the representations of Fidelity’s attorney and agents and by Fidelity’s failure to produce the policy and other evidence to negative coverage.
' Reference to Ewing’s third party petition, however, fails to disclose any allegation that Fidelity was the insurer of the automobile being driven by Ewing at the time of the collision or that Ewing came within the coverage of Fidelity’s policy. The gravañien of Ewing’s third party petition is a claim for damages for negligence on the part of Callender in not obtaining the automobile,, public liability insurance paid for' by Ewing, together with a claim for indemnity against- Fidelity, because it led Ewing to believe he had coverage and lulled', him' into ' inaction' in his defense of the claim against him.,
■ Nowhere- is an allegation made that the third party demand i-s based upon policy coverage. In fact the record leads us to believe that Ewing’s counsel made a studied' effort not to rely upon policy coverage for recovery. The theory which emerges from the record is in keeping with the third party petition — that is, Ewing’s claim is based upon Callender’s negligence in failing to obtain the insurance bargained for, which is a meritorious claim, and a plea of waiver and estoppel against Fidelity: Fidelity having waived the right to assert defenses of non-coverage and being estopped to deny coverage, all because of representations made by Fidelity to Ewing after filing of suit to the effect that he was covered under their policy.
Therefore; since Ewing has not alleged coverage under Fidelity’s policy in the third-party demand and has failed to prove coverage by introducing the policy into evidence in one of the several modes available to him under the law, only the question of waiver and estoppel remains to be resolved.
Waiver and estoppel cannot be invoked under the facts of this case. More than eleven months elapsed between the notice to Ewing of Fidelity’s denial of liability and the trial of the case. Ewing had ample time, therefore, to prepare his defense. An essential element of-the plea of .estoppel is detrimental reliance. Ewing has 'shown no detriment as a result of his reliance upon Fidelity’s representations that he had coverage under their policy; which *670 could not have been repaired before trial. Therefore the plea of estoppel is without merit.
Ewing has contended that the failure of Fidelity to produce the policy to show lack of coverage has the effect of proving that he was covered by the policy. To sustain this position he relies upon three Court of Appeal decisions: Hanford v. Jan C. Uiterwyk Co., 214 So.2d 236 (La.App.1968); Fontenot v. Lloyd’s Casualty Insurer, 31 So.2d 290 (La.App.1947) and Masaracchia v. Inter-City Express lines, 162 So. 221 (Orl.La.App.1935). Without passing upon the correctness vel non of these decisions, we observe that they are distinguishable from the case at bar. The cited cases all involve instances where the basic issue of coverage had been established, and this coverage was sought to be limited or excluded by the insurer without producing the policy in evidence to support the limitation or exclusion. The question presented in this case is whether there was ever any coverage on the automobile Ewing was driving. The burden, therefore, is upon Ewing to prove coverage. An admission by Fidelity that it issued a policy to Cal-lender is not an admission that Fidelity insured the automobile driven by Ewing.
In a case of this kind, where recovery under the policy is neither alleged nor proven, the courts may not depart from the fundamental requirement that the plaintiff bears the burden of proving the insurance coverage upon which his claim is based by a preponderance of the evidence, shift that burden to the defendant insurer and compel defendant to prove that its policy does not cover plaintiffs.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.