961 So.2d 622 (2007)
Charles ALEXANDER, et al., Plaintiffs-Appellees
v.
Charles CORNETT, et al., Defendants-Appellants.
No. 42,147-CA.
Court of Appeal of Louisiana, Second Circuit.
July 11, 2007.
*624 Perrier & Lacoste, L.L.C., by Guy D. Perrier, Rodney J. Lacoste, Jr., Richard C. Ely, Jr., Randy Thomas Cresap, for Appellant State National Ins. Co.
Craig & Gatti, by Ryan E. Gatti, Bossier City, for Plaintiffs/Appellees Charles Alexander and Cindy Alexander.
Seabaugh, Benson, Keene, Denny & Gerhardt, by Alan T. Seabaugh, Christopher B. Joffrion, Shreveport, for Plaintiff/Appellee State Farm Mutual Automobile Ins. Co.
Rountree, Cox, Guin & Achee, by Billy J. Guin, Jr., Shreveport, for Defendants/Appellees American National Property & Casualty Company and Charles Cornett.
Before WILLIAMS, PEATROSS and MOORE, JJ.
MOORE, J.
This is an appeal of a judgment holding that State National Insurance Company ("State National" or "Appellant") waived the right to assert a defense that the defendant, Charles Cornett, is not an insured under a commercial garage liability coverage policy issued to the plaintiff's business, Charlie's Auto Sales. State National contends the trial court committed three legal errors: (1) by finding that it was required to specially plead the provision excluding the appellee as a named insured in its answer; (2) by finding that the defendant, Charles Cornett, was an "insured" under the policy; and, (3) by finding that State National waived its defense to coverage. State National also contends that the trial court was clearly wrong in finding that, as a matter of fact, it provided a defense to Charles Cornett.
For the following reasons, we reverse the judgment of the district court and dismiss the plaintiffs' claim against State National. We remand the case for further proceedings.

Facts and Procedural History
The case arises out of an accident that occurred at Charles Alexander's used automobile sales lot, "Charlie's Auto Sales, Inc.," in Vivian, Louisiana, on November 27, 2001. A customer on the lot, Charles Cornett ("Cornett"), was preparing to test drive a 1993 GMC Safari van when he backed the vehicle into Mr. Alexander, the owner of Charlie's Auto Sales. Mr. Alexander was knocked to the ground and sustained injuries.
Charles and Cindy Alexander ("Alexander") filed a petition on March 18, 2002, against Cornett and his own automobile liability insurer, American National Insurance Company ("American"). The petition alleged that Cornett's negligence was the sole cause of Alexander's injuries. American *625 retained attorney Billy Guin to defend itself and Cornett.
Six weeks later, on May 2, 2002, Alexander filed an amended petition in which he named his own company's liability insurer, State National Insurance Company ("State National"), as a defendant. The amended petition alleged that on the date of the accident, State National had both a liability insurance policy and a UM/UI motorist coverage policy in effect for "Charlie's Auto Sales." It further alleged in paragraph six that the policy provided liability coverage on the van and liability coverage for the defendant driver, Cornett, and alleged in paragraph seven that the policy provided uninsured/underinsured motorist coverage for Alexander.
State National answered the amended petition on June 13, 2002. It admitted only that it issued an insurance policy to "Charlie's Auto Sales," but denied the other allegations, including the allegation that the liability policy covered Cornett. It alleged that the "policy is the best evidence of its contents and strict proof thereof is required." State National also denied UM/UI coverage on Alexander. Alexander had executed a waiver of UM/UI coverage when he obtained the policy for his company.
Nine months after it answered the amended petition, State National asked Alexander to dismiss his claims against it on the basis that Cornett was not an insured under the garage policy definition of "Who is an Insured," and that he (Alexander) had waived UM/UI coverage when he purchased the garage policy from State National. The commercial garage policy purchased by Alexander contains a limiting provision commonly found in garage policies that expressly excludes customers of an automobile dealership in its definition of an insured, unless the customer does not have liability insurance of his own or is statutorily underinsured. Since La. R.S. 22:671 provides that the driver's personal liability policy is primary in "test drive" circumstances at auto dealerships, these garage policies are designed to meet the minimum liability insurance requirements under the state's compulsory insurance law by providing liability insurance in cases where the driver is uninsured or underinsured. The specific provision in the State National policy reads:
WHO IS AN INSURED
a. The following are "insureds" for covered "autos";
(1) You for any covered "auto".
(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

* * *
(d) Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:
(i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.
(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is primarily garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit or other insurance.
(Emphasis Supplied).
Since it is undisputed that Cornett was a "customer" and Charlie's Auto Sales is an auto dealership, Cornett would only be covered if he had no personal automobile *626 liability insurance of his own or was statutorily underinsured. However, since Cornett is insured by American National to $25,000/50,000 liability limits, State National contended that Cornett was not an insured under the policy.
Alexander refused State National's request to dismiss it from the lawsuit, so State National subsequently moved for a summary judgment based on the policy definition of "Who is an Insured" above which excludes customers of an auto dealership if they have their own insurance.
The district court denied summary judgment on grounds that State National had waived its right to assert a coverage defense. It concluded that State National had retained the same attorney to defend itself and Cornett for a nine-month period before asserting that Cornett was not an insured, and that it had conducted a vigorous defense of the lawsuit, citing Steptore v. Masco Construction Co., 93-2064 (La.8/18/94), 643 So.2d 1213. According to the court, Steptore held that when an insurer, with knowledge of facts indicating non-coverage under the insurance policy, assumes or continues the insured's defense without obtaining a non-waiver agreement to reserve its coverage defense, the insurer waives such policy defense.
After several continuances, a bench trial on the "insurance coverage issues" was scheduled on June 29, 2006  the matter to be submitted on briefs. State National raised the same coverage issue that it had previously argued in its motion for summary judgment, while the plaintiffs, Cornett, American and State Farm[1] aligned themselves in opposition to State National. They contended that the policy definition of "who is an insured" that excepted customers of the auto sales business as insureds was a policy "exclusion" that must be pled as an affirmative defense in the defendant's answer to the petition or lost; that by its defense of the suit State National had waived its right to raise the policy exclusion, and that the exclusion itself was against public policy. American also argued that State National's policy provided primary coverage, or alternatively, it provided "concurrent liability coverage" that should be apportioned according to the ratio of the liability limits of the respective policies. Since the limits of the State National policy was $500,000 to its policy's $25,000 liability limits, American argued it should only be required to pay $1 to every $20 paid by State National.
The trial court dismissed American's "concurrent coverage" claim. As noted above, La. R.S. 22:671 specifically prescribes what insurance policies cover "test drives" of vehicles from an auto dealership and similar circumstances involving "loaner vehicles." In those situations, the driver's policy is primary and "not the policy of the vehicle sales or service dealer who provided the loaner vehicle."
On the question of whether Cornett was an insured covered under the liability policy issued to Charlie's Auto Sales, after an independent determination, the trial court, Judge Garrett presiding, adopted Judge Crichton's reasons for denying State National's motion for summary judgment  namely, that State National had waived its rights to claim any coverage exclusions under the policy. Additionally, the trial court concluded that State National was put on notice because the *627 amended petition stated that Cornett had a liability policy with American, which would trigger the exclusion in State National's liability policy coverage. The court stated that an insurance company is presumed to know the contents of its policy, and cited Carter v. Safeway Ins. Co., 37,788 (La.App. 2 Cir. 10/29/03), 859 So.2d 279 for the rule that an insurer has the burden to plead and prove an exclusion to coverage and that reliance upon an exclusion to defeat coverage is an affirmative defense which must be specifically pleaded in the defendant's answer. Pendleton v. Smith, 95-1805 (La.App. 4 Cir. 5/8/96), 674 So.2d 434. Without such a pleading, no proof can be offered in connection with the exclusion. Tudury v. Cooperative Cab Co., 265 So.2d 307, 312 (La.App. 4 Cir.1972); Nippert v. Baton Rouge Railcar Services, Inc., 526 So.2d 824 (La.App. 1 Cir.), writs denied, 530 So.2d 84, 87, 91 (La.1988).
State National filed the instant appeal raising four issues arising from the four assignments of error. Cornett and American submitted a joint brief opposing the appeal. State Farm submitted its own brief urging that this court affirm the trial court's judgment.

Discussion
Determination of two basic issues resolves this case: first, should the policy language that determines "Who is an Insured" be construed merely as part of the definition of an insured under the policy as opposed to an "exclusion," which must be pled as an affirmative defense? Second, was the trial court manifestly erroneous or clearly wrong in concluding that State National provided Cornett with a defense for nine months before raising the fact that Cornett was not an insured under the policy definition and thereby waived its right to assert non-coverage?
Should the "Exclusion" be Pleaded as an Affirmative Defense?
State National alleges that the trial court erred as a matter of law when it concluded that it was required to specially plead that Cornett is not an insured under the State National policy. As previously stated, the trial court concluded that the limiting provision as to "who is an insured" in State National's liability insurance policy definition of an insured is an "exclusion" that must be pled in the defendant's answer as an affirmative defense or it is waived, citing Carter v. Safeway Insurance Co., supra and Pendleton v. Smith, supra 95-1805 (La.App. 4 Cir. 5/8/96), 674 So.2d 434, writ denied, 96-1425 (La.9/13/96) 679 So.2d 107.
Appellees contend that the policy definition of who is an insured "excludes" customers of auto dealerships and is therefore an "exclusion" to coverage which must be pled as an affirmative defense. They have supplied this court with several additional citations to support the argument that a policy exclusion must be pled as an affirmative defense. E.g., Touro Infirmary v. Marine Medical Unit, Inc., 96-2506 (La.App. 4 Cir. 5/21/97), 699 So.2d 90; Tudury, supra (After having admitted the existence of the policy coverage, it was incumbent upon the insurer to plead the exclusion as an affirmative defense.); Fontenot v. Lloyds Casualty Insurer, 31 So.2d 290 (La.App. 1 Cir.1947). (The insurer admitted issuance of a collision policy on plaintiff's automobile but failed to deny that the document annexed to the petition formed the basis for liability.); Nippert, supra; Holder v. Lockwood, 92 So.2d 768 (La.App. 2 Cir.1957).
State National contends that its defense does not rely on an "exclusion" in the policy, but simply on the definition of "Who Is An Insured" under the policy, citing Wimberly v. McCoy Tree Surgery *628 Co., 766 So.2d 729 (La.App. 2 Cir. 8/25/00). In Wimberly, the plaintiff, Ms. Wimberly, was injured in an accident while riding as a passenger in a vehicle owned and operated by her daughter, Rebecca Shepherd. Ms. Wimberly alleged that her own liability/UM insurer, American Deposit Insurance Company ("American Deposit"), issued a policy to her that defined her daughter as an uninsured/underinsured motorist. American Deposit answered the allegations in Ms. Wimberly's petition with a general denial. The definition of an uninsured motor vehicle in the policy excluded UM/UI motorist coverage for a vehicle owned by any relative. Apparently when American Deposit attempted to raise this issue, Ms. Wimberly complained that the policy exclusion was an affirmative defense that must be specially pled in defendant's answer to the petition.
We affirmed the trial court's judgment dismissing the claim by distinguishing the definition of an uninsured motorist as a general part of the policy from any special exclusions in the policy that must be asserted as an affirmative defense. Id. at 737. An affirmative defense is one that raises a new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating the plaintiff's demand on its merits. Id. at 736. (Citations omitted). The new matter raised must be one not raised by plaintiffs' petition. Id. Thus, inasmuch as Ms. Wimberly alleged that Ms. Shepherd was an underinsured motorist under the policy, American Deposit's general denial did not raise any new issues, but merely answered the allegation as set forth by Ms. Wimberly that she was an insured. Id. at 737. Therefore American's defense was not an affirmative defense that must be specially pleaded.
Appellees answer that Wimberly is inapplicable to the instant case because the issue of who is an insured in Wimberly involved UM/UI coverage, whereas our case concerns who is an insured for purposes of liability insurance coverage. This makes a difference, appellees contend, because of Louisiana's financial responsibility and compulsory insurance laws regarding liability insurance contained in La. R.S. 32:900,[2] et seq. In short, because State National's garage liability policy definition of an insured "excludes" one class of permissive users, namely, insured customers of an auto dealership, appellees contend that this constitutes an "exclusion" to the omnibus coverage required by the statutory omnibus clause and therefore must be specially pleaded as an affirmative defense. Stated another way, appellees contend that the statutory omnibus clause creates a statutory presumption that all permissive users are insureds, and, therefore, it has no burden to establish that Cornett is an insured under the State National liability policy. Rather, plaintiffs contend that it is the burden of the insurer to show that any particular permissive user is excluded *629 from coverage under a liability insurance policy.
We begin our analysis at this point in the argument.
The correct rule is that a statutory omnibus clause such as R.S. 32:900(B)(2) supercedes only conflicting insurance policy provisions. Green v. Bailey, 29,759-CA (La.App. 2 Cir. 8/20/97), 698 So.2d 715; Couch, Sec. 45:687, 697, 698, 714. See also, Raimer, supra at note 2; Fields v. Western Preferred Casualty Co., 437 So.2d 344 (La.App. 2 Cir.1983), writ denied, 440 So.2d 754 (La.1983). (Emphasis ours). In Green, we held that the statutory omnibus clause requiring automobile liability coverage for permissive users does not supercede a statute permitting an insurer and insured to exclude a named person who is a resident of the same household from coverage.
However, in this instance, the garage policy issued by State National is not in conflict with the statutory omnibus clause because the policy assures that permissive users, even customers of auto dealerships, are insured.
In Goodwin v. Western Heritage Insurance Company, 38,836-CA (La.App. 2 Cir. 8/18/04), 880 So.2d 985 (J. Williams writing for the court), this court held that an identical limiting provision present in the garage policy in this case regarding "who is an insured" does not conflict with the requirements of the statutory omnibus clause and the omnibus clause of the policy complied with the minimum requirements of La. R.S. 32:900. In that case, the driver, a customer of Performance Cars and Trucks ("Performance"), an automobile dealership, caused an accident injuring the plaintiffs. Plaintiffs filed suit against Performance's garage liability insurer, Western Heritage Insurance Company ("Western Heritage"), alleging that the driver was an insured under the Western Heritage policy on grounds that the Western Heritage insurance contract conflicted with Louisiana law. Western Heritage subsequently moved for summary judgment, which the district court granted on grounds that the driver was not an insured under the definition of an insured in the policy. This court affirmed the judgment, holding that the limitation of coverage in the policy did not violate public policy and did not conflict with the statutory provisions. The policy specifies that it provides liability coverage when the customer's insurance is inadequate to satisfy the minimum requirements of our compulsory or financial responsibility law. We observed that the legislature has decided that the driver's liability policy, not the repair shop, provides the primary coverage. La. R.S. 22:671.[3] We also noted that in order for the plaintiffs to prevail in their claim that the customer was covered under the Western Heritage policy, they must show that the customer did not have automobile liability insurance. Accordingly, summary judgment was appropriate.
In Marshall v. Seago, 41,138-CA (La. App. 2 Cir. 6/28/06), 935 So.2d 752 (J. Stewart writing for the court), this court again held that an identical limitation of coverage was effective and does not violate public policy. In that case, Seago was test driving a vehicle owned by Mansfield Auto World, Inc., a car dealership, when he was involved in a collision with a vehicle driven by Marshall and owned by Biscamp. On *630 August 11, 2004, Marshall and Biscamp sued Seago and his insurer, State Farm, and Auto World and its insurer, Federated Mutual Insurance Company ("Federated"), alleging that Seago was at fault. Auto World and Federated answered the petition with a general denial.
On April 15, 2005, eight months after the petition was filed, Auto World and Federated moved for summary judgment. Auto World asserted that it was not liable for the negligence of its customers test driving a vehicle while Federated asserted that Seago was not an insured under its policy because he was a customer of Auto World, and he was otherwise covered by liability insurance that met the minimum limits required by Louisiana's omnibus coverage law. Federated submitted a copy of the policy in support of its motion. The trial court granted the motions dismissing Auto World and Federated from the suit.
The plaintiffs, Seago and State Farm appealed only the judgment in favor of Federated that held that Seago was not an insured under the Federated policy. The appellants argued that the very same provision at issue in this case was against the public policy in favor of omnibus coverage because it precluded coverage for permissive drivers and is therefore unenforceable.
We noted that insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. The provision in question does not conflict with La. R.S. 32:900(B)(2) because it provides liability coverage when the customer's insurance is inadequate to satisfy the minimum requirements of the statute. Accordingly, we affirmed the judgment dismissing Federated from the suit because Seago was not an insured under the policy.
This same policy definition was also upheld in Savana v. Certain Interested Underwriters at Lloyd's London, 2001-2450 (La.App. 1 Cir. 7/2/02), 825 So.2d 1242; Baker v. Kenny, 99-2950 (La.App. 4 Cir. 5/3/00), 767 So.2d 711, writ denied, 2000-2153 (La.10/13/00), 771 So.2d 650; and, Gambino v. Lamulle, 97-2798 (La.App. 4 Cir. 6/10/98), 715 So.2d 574.
Unlike Green, supra in which this court held that a statutorily authorized "named driver exclusion" was not in conflict with Louisiana's compulsory insurance law, Goodwin, supra, Marshall, supra, Savana, supra and the other cases cited above hold that the same omnibus clause that is in the State National policy in this case does not conflict with, but instead complies with, the minimum requirements of La. R.S. 32:900(B)(2). Therefore, since the State National omnibus clause offers no less than what is required by the statutory omnibus clause, it is neither an exception nor an exclusion to the statutory omnibus clause.
Accordingly, we find no reason to conclude that the statutory omnibus clause somehow overrides the policy's omnibus clause in this case that meets the statutory requirements, or that the statute creates a presumption that the plaintiff is an insured under the State National policy that dispenses with the plaintiffs' burden of showing that Cornett is indeed an insured under the policy. In both Goodwin, supra and Marshall, supra, we affirmed the rule that the (putative) insured has the burden of showing that an incident falls within the coverage of the policy. Cf. Mercadel v. Tran, 92-0798 (La.App. 4 Cir. 3/29/94), 635 So.2d 438. (There is no presumption that the driver is a permissive user under the omnibus clause. The burden is on the plaintiff to establish every fact that is essential *631 and also to establish that his claim is within the policy coverage.).
It is well-settled that the burden is on the plaintiff to make a prima facie showing that one is an insured under the insurance policy. Turner v. Ewing, 255 La. 659, 232 So.2d 468 (1970); C.L. Morris, Inc. v. Southern American Ins. Co., 550 So.2d 828 (La.App. 2 Cir.1989); Ho v. State Farm Mut. Auto Ins. Co., XXXX-XXXX (La.App. 3 Cir. 12/31/03), 862 So.2d 1278, 1281; Mercadel v. Tran, supra; Pierce v. Aetna Life and Cas. Ins. Co., 572 So.2d 221 (La.App. 1 Cir.1990). One of the several ways this burden is met is by attaching a copy of the insurance policy to the petition in which coverage is alleged. Id. Once this burden is met, the burden then shifts to the insurer to prove any exclusion under the policy. Carter, supra. In this instance, the plaintiffs (the Alexanders) simply alleged in paragraph 6 of their petition that Cornett was insured under a liability insurance policy issued to Charlie's Auto Sales. State National answered the allegation by (1) admitting that it issued a policy of insurance to Charlie's Auto Sales; (2) specially pleading that the policy is the best evidence of its contents; and, (3) denying all other allegations in paragraph 6, which must be construed as a general denial of the allegation that the vehicle and Cornett were covered under the policy issued to Charlie's Auto Sales.
Because the ominibus clause in the State National policy does not conflict with La. R.S. 32:900(B)(2) and there is no presumption that Cornett is an insured under the State National policy, but a fact that the plaintiffs must establish, we conclude that it is of no import that Wimberly, supra, involved UM/UI coverage. The same reasoning applies in this case. The cases cited by the appellees in support of the argument that the limiting provision in State National's policy that excepts customers from coverage in this case constitutes an "exclusion" that must be pled as an affirmative defense are inapposite. Those cases involve exclusions that concern either certain excluded risks or forfeiture of coverage. Whether the claimant was an "insured" had been established or was uncontested. See, e.g., Carter, supra. (Where coverage is provided to a particular insured and insurer relies on a policy exclusion to defeat that coverage, burden is on the insurer to plead and prove exclusion).
An affirmative defense is distinguishable from a negative defense in that the latter seeks to refute an essential allegation of the plaintiff's petition. Johnsa v. Edwards, 582 So.2d 1280 (La.1991); Keller v. Amedeo, 512 So.2d 385, 388 (La.1987). An affirmative defense, by contrast, raises new matters which, assuming the allegations in the petition to be true, constitute a defense to the action and will have the effect of defeating plaintiff's demand on its merits. Keller, supra at 387; Webster v. Rushing, 316 So.2d 111, 114 (La.1975); Wimberly, supra. Hence, State National's denial of the allegation that Cornett is an insured under the policy definition of "Who Is An Insured" does not raise a new matter, but simply denies an essential element of plaintiff's claim. Accordingly, it is not the type of "exclusion" that must be raised as an affirmative defense, irrespective of whether the provision in the policy is characterized as an "exclusion," "exception" or "limiting provision."
Nor does State National's admission that it issued a policy of insurance to Charlie's Auto Sales suffice to carry the plaintiffs' burden of making a prima facie case that Cornett is an insured. An admission by State National that it issued a policy to Charlie's Auto Sales is not an admission that Cornett is an insured. See Turner v. Ewing, supra at 472.
*632 Thus, we conclude that the trial court erred in concluding that the policy definition of an insured in the State National policy was an exclusion that must be specially pled as an affirmative defense.
Did State National Provide Cornett With a Defense?
The next issue is whether, as a matter of fact, State National waived its defense by its actions that the trial court concluded constituted a vigorous defense of Cornett for nine months without obtaining a waiver agreement from Cornett to reserve any policy defenses. Because this is a factual finding, it is subject to the manifest error standard of review. Guillory v. Insurance Co. of North America, 96-1084 (La.4/8/97), 692 So.2d 1029.
Waiver or estoppel is not favored in Louisiana law and such claims must be examined carefully and strictly. L.T. v. Chandler, 40,417 (La.App. 2 Cir. 12/14/05), 917 So.2d 753; Case v. Louisiana Medical Mutual Insurance Company, 624 So.2d 1285 (La.App. 3 Cir.1993). Though rarely applied, estoppel may be appropriate if three elements are established: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance or representation. Id. A party invoking the doctrine must exercise such diligence as would reasonably be expected under the prevailing circumstances to avoid mistake or misunderstanding. Id.; Case, supra. In L.T. v. Chandler, supra, we held that where plaintiffs never showed justifiable reliance to their detriment, the insurer did not waive a coverage defense.
The trial court's conclusions are based largely on Steptore v. Masco Construction Co., 93-2064 (La.8/18/94), 643 So.2d 1213. In Steptore, supra, Steptore was injured when a steel cable attached to a crane on a barge moored next to the vessel "Donna Rita" snapped and struck Steptore in the face, causing him to suffer disabling injuries. Steptore sued the owner of the barge, Masco, and its primary liability insurer, Ocean Marine, and its excess liability insurer, Lloyd's. Ocean Marine hired a law firm to defend itself and Masco. Six months later, it denied liability coverage on grounds that Masco breached a navigation warranty contained in the policy by moving the barge from its designated location to another site several days before the accident. Such a breach would void coverage for the accident.
Ocean Marine and Lloyd's filed a motion for summary judgment on the coverage issue which was denied. After trial in which Steptore was awarded damages against Masco, Ocean Marine & Lloyd's, the two insurers appealed the judgment finding coverage to the First Circuit, alleging that Masco's breach of the navigation warranty voided coverage. In an unpublished opinion at 621 So.2d 214 (La.App. 1 Cir.1993), the appellate court found that the navigation warranty was unambiguous and Ocean Marine was not precluded from asserting the navigation warranty as an exclusion to coverage. It therefore held that there was no insurance coverage for Steptore's accident. The Supreme Court granted writs and reversed the court of appeal by finding that Ocean Marine had waived its coverage defense by providing a joint defense for itself and Masco.
The Steptore Court set out the following principles regarding waiver of a coverage defense:
Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. Id. at 1216. A waiver may apply to any provision of an insurance *633 contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered. Id.

[A]n insurer is charged with knowledge of the contents of its own policy. [N]otice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered. Id.

Waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest. Id. Accordingly, when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense.
Applying these principles to the following facts, the court concluded that Ocean Marine waived its right to assert a coverage defense by assuming and continuing the defense of its insured in the face of facts indicating that it had a right to deny coverage for the accident. The Court found that Ocean Marine's vice-president had notice on the day of the accident that the barge was supposed to be located at the Bayou Steel facilities on the Mississippi River near LaPlace in St. John the Baptist Parish. However, at the time of the accident, the barge was not at that location. Secondly, notice of the potential defense to coverage under the policy was also provided by service of the petition upon Ocean Marine. The petition clearly stated that the accident occurred in Ascension Parish, not in St. John the Baptist Parish.
The critical issue of the Steptore opinion concerned whether Ocean Marine assumed the legal defense of Masco, its insured, and in so doing, waived its right to assert the coverage defense. The Steptore court found that Ocean Marine named the law firm Evans & Co. to represent both itself and Masco without reservation of the right to deny coverage under the policy despite unequivocal notification of the navigation warranty violation. Evans & Co. first appeared as counsel of record for Masco when it filed a motion for an extension of time to answer the petition. Evans & Co. then met with Mr. Massi, Masco's president, to discuss the particulars of the accident and to review all pertinent company records. Mr. Massi stated that he informed Evans & Co. of precisely the location of the accident. The law firm continued its representation of Masco by participating in discovery-it propounded interrogatories to the plaintiff, it answered plaintiff's interrogatories, and it filed a motion to compel full and complete answers and responses to Masco's and Ocean Marine's interrogatories and it represented on all of these papers that it was counsel for Masco and Ocean Marine. Additionally, the law firm answered the petition of intervention on behalf of both Masco and Ocean Marine.
In summary, the Steptore Court concluded that Ocean Marine and its attorneys possessed facts indicating a possible defense to coverage based on a breach of the navigation warranty at the outset of this litigation. Nevertheless, it assumed and continued the defense of Masco for six months. Ocean Marine did not reserve its right to deny coverage under the policy prior to assuming the defense of Masco. Nor did Ocean Marine provide Masco separate counsel in order to avoid a potential *634 conflict of interest. Accordingly, because the insurer assumed the defense without reserving its rights or otherwise protecting its interests and continued to represent the insured when its own interests were adverse to the insured, the court found that Ocean Marine waived any coverage defense it may have had under the policy.
In this case, the trial court found that State National had "notice" of a coverage defense when the plaintiffs alleged that Cornett was covered by a liability policy issued by American. The court also concluded that because State National did not have Cornett sign a waiver agreement allowing it to assert any coverage defenses, and because it did not appoint a different attorney to defend Cornett, then it assumed Cornett's defense and all of its subsequent actions were on behalf of Cornett.
State National first retained the law firm of Tutt & Bordelon, LLC to defend the suit filed by Alexander. As previously stated, American retained attorney Billy Guin to defend itself and Cornett. After filing an answer to the amended petition in which it generally denied the allegations, State National engaged in discovery over the next nine months. State National attended the depositions of Charles Cornett and Charles Alexander. Cornett was deposed by Gatti, counsel for plaintiff on June 25, 2002. Billy Guin, Cornett's counsel, deposed Alexander the same day.
Dr. Alireza Minagar was deposed. Appearances included Bordelon representing State National. Bordelon noticed this deposition and questioned the doctor regarding Alexander's injuries.
The record contains a copy of the interrogatories sent to Alexander by Bordelon on October 31, 2002. It is signed by him on behalf of Tutt & Bordelon, LLC, "ATTORNEYS FOR DEFENDANTS, STATE NATIONAL INSURANCE COMPANY."
Additionally, the record contains several letters or other documents written by Bordelon. These include:
 Cover Letter dated October 31, 2002, from Bordelon to Gatti accompanying discovery interrogatories and requesting updated information on the medical condition of Alexander. There is no mention of Cornett.
 Letter dated February 3, 2003, from Bordelon to Gatti asking for responses to discovery propounded in October and updated medical reports. He also notifies Gatti that he intends to take the deposition of Dr. Minager, a physician treating Alexander. Nothing about representing Cornett; however, cc (carbon copy) to Billy Guin.
 Letter dated February 6, 2003, from Bordelon to Gatti with enclosed medical records release forms for Alexander to sign so that he could obtain medical reports on Alexander. Nothing indicating State National represented Cornett.
 Letter dated February 18, 2003, confirming date of deposition of Dr. Minager. Nothing indicating State National represented Cornett.
 Notice of deposition of Dr. Minager sent to Cornett and American National through attorney of record Billy Guin, and to the Alexanders through their attorney of record, Ryan Gatti. The notice is signed by Thomas Bordelon for Tutt & Bordelon, LLC, "ATTORNEYS FOR DEFENDANTS, STATE NATIONAL INSURANCE COMPANY."
 Letter dated February 20, 2003, from Bordelon to Ryan Gatti and Billy Guin regarding available dates from Joe Bleich for mediation of the lawsuit.
*635  Letter dated March 7, 2003, from Bordelon to Joe Bleich regarding agreement to schedule mediation on April 30, 2003, in his office. The letter gives the addresses of both Ryan Gatti and Billy Guin as opposing counsel.
 Letter dated March 13, 2003, from Bleich to Bordelon confirming mediation.
Sometime during this period, a State National adjuster contacted Bordelon and told him that it was their position that Cornett was not covered under the policy based on the "Who is an Insured" definition of an insured.
Finally, we note a letter dated March 25, 2003, from Billy Guin to Bordelon in which Guin states that he understands that "your company has instructed you that they feel that my driver was not an insured under your policy." Guin states that under that scenario, there is only his 25K to settle the case, unless Gatti (Alexander) can successfully oppose a motion for summary judgment. The scheduled mediation is cancelled.
After Alexander refused to dismiss the claim against State National, on August 8, 2003, State National moved for summary judgment dismissing it from the suit on grounds that Cornett was excluded from coverage.
In contrast to facts in Steptore, there is nothing in the record to indicate that State National ever purported to represent Cornett. There is no evidence of any direct contact between Cornett and State National's attorneys. Unlike Steptore, where the firm appointed by the insurer actually captioned and signed documents as counsel for Masco and Ocean Marine, there are no documents in the record that indicate that the firm of Tutt & Bordelon, LLC represented both State National and Cornett. The fact that State National scheduled mediation proceedings is not an admission and cannot be so considered. La. R.S. 22:661; Alexander v. Minnieweather, 595 So.2d 802 (La.App. 2 Cir.1992). Importantly, there is no evidence in the record that Cornett relied on State National to defend him or believed that he was defended by State National. Moreover, it was not Cornett who raised the issue of waiver, but the Alexanders, and it was the Alexanders who opposed the motion for summary judgment on the coverage issue. We observe that counsel for Cornett indicated that the plaintiffs' counsel would oppose the motion for summary judgment filed by State National.
The trial court obviously relied on the insurer's duty to defend to reach the conclusion that Tutt & Boredelon, LLC represented Cornett as well as State National. It therefore concluded that any defense of State National was a defense of Cornett. Since State National did not obtain a waiver agreement from Cornett reserving its coverage defenses, the court concluded that the latter relied to his detriment on State National's defense, even though the record does not indicate that Cornett ever asserted liability coverage, nor is there any evidence of Cornett's detrimental reliance required for the doctrine of estoppel or waiver to apply. Turner v. Ewing, supra;[4]L.T. v. Chandler, supra. However, a waiver agreement should not be required if the petition unambiguously indicates that State National had no duty to defend Cornett.
Under Louisiana law, the insurer's obligation to defend suits against its insured is generally broader than its liability for *636 damage claims. Steptore v. Masco Const. Co., 93-2064 (La.8/18/94), 643 So.2d 1213; American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969); Gleason v. State Farm Mut. Auto. Ins., Co., 27,297 (La.App. 2 Cir. 8/23/95), 660 So.2d 137, writ denied, 95-2358 (La.12/15/95), 664 So.2d 454. This duty to defend is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Id. Thus, if, assuming all the fact allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit or the eventual determination of actual coverage. Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App. 2 Cir. 3/31/99), 731 So.2d 482.
In this instance, if we assume all of the allegations of the petition to be true, coverage obligating State National to defend is unambiguously excluded. While the trial court concluded that the plaintiffs' allegation that Cornett was insured for liability by American constituted "notice" to State National that it had a policy defense, it is also notice that Cornett is not an insured under the policy and therefore no duty to defend arose. Assuming this fact to be true, the State National policy issued to Charlie's Auto Sales unambiguously excludes Cornett as an insured. On the other hand, if the allegation that the State National liability policy covered Cornett were accepted as true, coverage under the policy is still not triggered. Under La. R.S. 22:681, Cornett's liability policy with American is primary, under which the duty to defend is triggered. State National has no duty to defend unless excess coverage was alleged or triggered. American Home Assur. Co. v. Czarniecki, supra; Elliott v. Continental Cas. Co., XXXX-XXXX (La.2/22/07), 949 So.2d 1247.
Accordingly, we conclude that the trial court erred in finding that State National retained counsel for both itself and Cornett. We also conclude that the trial court was clearly wrong in finding that State National vigorously defended the suit against Cornett and thereby waived its defense that Cornett is not an insured under the policy.

Conclusion
For these reasons, we hold that the trial court erred when it concluded that State National waived its coverage defense. Cornett is not an insured under the State National liability policy. Accordingly, the judgment of the trial court is reversed and State National is dismissed from the lawsuit. The case is remanded for further proceedings. The plaintiffs, State Farm, Cornett and American are cast in judgment to share equally costs of this appeal.
REVERSED AND RENDERED; REMANDED.
NOTES
[1] State Farm Mutual Automobile Insurance Company ("State Farm"), the plaintiffs' liability/UM/UI insurance carrier, was added as a defendant by plaintiffs' second amended petition. State Farm filed cross-claims against American National and State National to recover over $46,000 for medical costs that it had paid for Alexander and any future sums it may have to pay.
[2] La. R.S. 32:900(B)(2), which defines the liability limits of the compulsory liability insurance law is also known as the "statutory omnibus clause." See Raimer v. New England Ins. Co., 595 So.2d 1218 (La.App. 3 Cir.1992). It provides, in pertinent part, that the owner's liability insurance policy * * *: * * *

(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:
(a) Ten thousand dollars because of bodily injury * * *.
[3] The legislature apparently reasoned that to require automobile dealerships, repair shops and similarly situated businesses to provide liability insurance for thousands of permissive users on the hundreds of vehicles temporarily on their lots at any given time would be overly burdensome on those businesses and therefore shifted that risk to each individual "customer's" liability policy, unless the customer is uninsured.
[4] In fact, we have serious doubt whether the Alexanders are in a position to assert a waiver of the policy defense on behalf of a putative insured. Cf. Gambino v. Lamulle, 1997-2798 (La.App. 4 Cir. 6/10/98), 715 So.2d 574.