Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,074-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JULIA ELLIS, INDIVIDUALLY          Plaintiff-Appellant
AND ON BEHALF OF GLINDALE
RANDOLPH (D)

versus

MINH MAI, M.D.          Defendant-Appellee

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2022-2714

Honorable Jefferson Bryan Joyce, Judge

* * * * *

MCGLYNN, GLISSON & MOUTON     Counsel for Appellant
By: Eric Edward Helm

FRILOT, L.L.C.          Counsel for Appellee
By: Halley S. Carter

* * * * *

Before ROBINSON, HUNTER, and MARCOTTE, JJ.

**ROBINSON, J.**

Julia Ellis appeals a judgment granting an exception of no cause of action and dismissing her medical malpractice lawsuit against Dr. Minh Mai with prejudice.

For the following reasons, we affirm the judgment granting the exception of no cause of action but remand this matter to the trial court to allow Ellis the opportunity to amend her petition to state a cause of action.

## FACTS[1]

On June 7, 2021, Glindale Randolph was admitted to St. Francis Medical Center for surgery on an abscess located on his right thigh. Randolph, who was 46 years old, had a history of diabetes and hypertension.

Following surgery, compression devices were ordered for his lower legs to prevent deep vein thrombosis. Randolph was in stable condition on room air. However, on June 8, he required oxygen by nasal cannula at 2L/minute.

Randolph was examined by Dr. Minh Mai, a hospital medicine physician, on June 8. A tachycardic heart rate of 114 beats per minute and decreased oxygen saturation were noted. Dr. Mai ordered Lasix, nebulizer breathing treatments, and a chest x-ray for dyspnea.

On the night of June 9, Randolph had several hours of acute hypoxia with his oxygen levels falling to as low as 50%. He was placed on a nonrebreather oxygen mask. Dr. Ezikiel, another hospital medicine

---

[1] The background concerning Randolph's treatment comes from the allegations in the petition.

physician, responded to pages from the nurses and ordered Randolph's arterial blood gases to be measured.

On June 10, Randolph required a Venturi mask providing 12-15L/minute of oxygen in order to maintain oxygen levels that were no higher than 92%. He also remained tachycardic. A third hospital medicine physician, Dr. David Lai, noted hypoxia of unknown origin and ordered a CT scan of the chest. The scan was interpreted as showing pneumonia. Dr. Lai ordered a high flow nasal canula at 35L/minute, antibiotics, a respiratory panel, and cough syrup. The respiratory panel was negative for all viruses. A pulmonary specialist would be consulted if there was no improvement by the next morning.

At 11:00 p.m. on June 10, a nurse found Randolph in a locked bathroom. He was unresponsive and had no pulse or respirations. He was pronounced dead at 11:43 p.m. The cause of death was a saddle pulmonary embolism due to deep vein thrombosis.

A request for a medical review panel was filed naming Dr. Mai and other health care providers. By letter dated March 14, 2022, the Louisiana Patient's Compensation Fund ("PCF") informed plaintiff's counsel that Mai was not a qualified health care provider and not entitled to have the medical malpractice claims against him reviewed by a medical review panel. The Division of Administration advised the same by letter dated May 6, 2022.

On August 5, 2022, Julia Ellis, individually and on behalf of her son Randolph, filed suit against Dr. Mai. She asserted survival and wrongful death claims. Ellis alleged that Dr. Mai was negligent and breached the standard of care by failing to: (1) order labs and imaging to rule out

2

pulmonary embolism in a post-surgery patient with acute hypoxia; (2) consult a pulmonologist; (3) admit Randolph to a telemetry unit or the ICU; (4) order a CT angiogram or D-Dimer level; and (5) order an anticoagulation drug. She further alleged that Dr. Mai's negligence, substandard care, and vicarious liability contributed to Randolph's untimely death or in the alternative, caused him to lose a chance of survival.

Dr. Mai filed the exception of no cause of action in which he argued that because of Governor John Bel Edwards's emergency declaration due to the Covid pandemic, Ellis was required to prove gross negligence or willful misconduct in order to succeed on her medical malpractice claim. Dr. Mai contended that Ellis's claims are based solely on general negligence, she failed to allege gross negligence or willful misconduct, and she failed to allege facts which would give rise to such claims.

La. R.S. 29:771(B)(2)(c)(i) ("the statute") of the Louisiana Health Emergency Powers Act ("LHEPA") states:

> During a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct.

A health care provider is defined as "a clinic, person, corporation, facility, or institution which provides health care or professional services by a physician, dentist, registered or licensed practical nurse, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, psychologist, or psychiatrist, and any officer, employee, or agent thereof acting in the course and scope of his service or employment." La. R.S. 29:762(4).

On March 11, 2020, Governor Edwards declared a public health emergency for the Covid 19 virus through Proclamation Number 25 JBE

3

2020.  On May 26, 2021, Governor Edwards proclaimed an extension of the emergency provisions due to the Covid 19 public health emergency through Proclamation Number 94 JBE 2021.  Both proclamations were attached as exhibits to the memorandum in support of the exception.

Ellis acknowledged in her memorandum in opposition to the exception that it was undisputed that the declaration was in effect at the time of Dr. Mai's treatment and that allegations of gross negligence were not asserted in the petition.  Ellis argued that: (1) the statute is a qualified immunity provision that must be pled as an affirmative defense; (2) Dr. Mai did not meet his burden of proving by a preponderance of the evidence that the statute granted him qualified immunity in this circumstance; (3) applying the immunity provision in this matter is against legislative intent and leads to absurd consequences; and (4) the immunity provision is unconstitutional. Ellis argued in the alternative that she should be allowed to amend the petition to remove the grounds of the exception.

Dr. Mai objected in his reply memorandum to giving Ellis the opportunity to amend her petition because the allegations did not raise grounds which could form the basis of a claim for gross negligence or willful misconduct.

In its reasons for judgment, the trial court first concluded that while Dr. Mai could have raised the immunity issue as an affirmative defense, that does not preclude him from raising it as an exception of no cause of action. In reaching this conclusion, the court relied on *Welch v. United Medical Healthwest-New Orleans, L.L.C.*, 21-684 (La. App. 5 Cir. 8/24/22), 348 So. 3d 216.  The court concluded that Ellis could not prevail under the standard

for an affirmative defense or for an exception of no cause of action. The court also rejected the argument that applying the immunity provision under these facts went against legislative intent and led to absurd consequences. The court recognized the public health crisis created by Covid 19 and that this was the situation that the legislature contemplated when implementing the immunity provision. The court did not consider the constitutional argument as it was not properly pled. Finally, the court denied the request for leave to amend the petition because there was nothing in the record that would support an amendment to allege gross negligence or willful misconduct. Moreover, gross negligence or willful misconduct could have been pled by Ellis in the alternative.

## DISCUSSION

In *Ambrose v. New Orleans Police Dept. Ambulance Service*, 93-3099, pp. 5-6 (La. 7/5/94), 639 So. 2d 216, 219-220, the Louisiana Supreme Court addressed the concept of gross negligence:

> Gross negligence has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." Gross negligence has also been termed the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." "There is often no clear distinction between such [willful, wanton, or reckless] conduct and 'gross' negligence, and the two have tended to merge and take on the same meaning." Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.

Citations omitted.

Ellis concedes that the declaration of a public health emergency was in effect at the time of her son's treatment by Dr. Mai. She also concedes

that her petition did not include an allegation of gross negligence or willful misconduct. Instead, she maintains that the judgment should be reversed because the qualified immunity provided through the statute is an affirmative defense that must be pleaded by Dr. Mai in his answer. In support of her argument, she cites *Sebble on Behalf of Estate of Brown v. St. Luke's #2, LLC*, 23-00483 (La. 10/20/23), 379 So. 3d 615.

In *Sebble*, the Louisiana Supreme Court concluded that the gross negligence standard in the statute could not be considered by a medical review panel. The court noted that it agreed with the appellate court's characterization of the statute as an immunity statute. The court also stated that because statutory immunity is an affirmative defense, it may only be raised in an answer filed in a civil proceeding. In a footnote, the court cited *Welch*, where the appellate court determined that the tort immunity provided in the statute had been mistakenly pled as an exception of no cause of action when it is in fact an affirmative defense.

In *Welch*, the defendant, United Medical, raised the exception of no cause of action to Welch's medical malpractice lawsuit. United Medical argued that the alleged malpractice took place during the public health emergency, that it was granted immunity under the statute, and that Welch's allegations did not include claims of gross negligence. In opposition, Welch argued that the statute provides a qualified tort immunity, which is an affirmative defense that United Medical failed to meet its burden of proving. At the hearing on the exception, the trial court entered into evidence: (1) the memorandum submitted by United Medical; (2) a letter from the PCF advising that United Medical was not a qualified health care provider; and

(3) a copy of Governor Edwards's first proclamation of a state of emergency. The exception was sustained.

The *Welch* court found that the tort immunity provided in the statute was mistakenly pled by United Medical as an exception of no cause of action when it is actually an affirmative defense. However, the trial court had considered it properly pled on the basis of La. C.C.P. art. 1005, which states, in part:

> If a party has mistakenly designated an affirmative defense as a peremptory exception or as an incidental demand, or a peremptory exception as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.

The *Welch* court concluded that United Medical met its burden of proving beyond a preponderance of the evidence that the alleged negligence occurred during a state of public health emergency, which triggered the immunity provision, but that it did not rise to the level of gross negligence. The *Welch* court determined that the trial court did not err in finding that the statute applied in that matter and that the affirmative defense of tort immunity provided by it defeated Welch's demand on its merits.

In *Doe v. Dynamic Physical Therapy, LLC*, 2024-0723 (La. App. 1 Cir. 12/27/24), 2024 WL 5233066, __ So. 3d __, the appellate court affirmed a judgment sustaining the exception of no cause of action on the basis of the statute. In a footnote, the *Doe* court found that the tort immunity provided by the statute was "mistakenly" pled by the defendants in two peremptory exceptions of no cause of action when it was actually an affirmative defense, which the trial court considered properly pled under La. C.C.P. art. 1005.

7

An affirmative defense is one that raises a new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating the plaintiff's demand on its merits. *Alexander v. Cornett*, 42,147 (La. App. 2 Cir. 7/11/07), 961 So. 2d 622, *writ denied*, 07-1681 (La. 11/2/07), 966 So. 2d 603.

The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. *Ramey v. DeCaire*, 03-1299 (La. 3/19/04), 869 So. 2d 114. The court reviews the petition and accepts well-pleaded allegations of fact as true. *Id*. All doubts are resolved in favor of the sufficiency of the petition to afford litigants their day in court. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876. The issue at the trial of the exception of no cause of action is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *Ramey*, *supra*.

An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief. *City of New Orleans v. Board of Directors of Louisiana State Museum*, 98-1170 (La. 3/2/99), 739 So. 2d 748; *Rangel v. Denny*, 47,381 (La. App. 2 Cir. 8/8/12), 104 So. 3d 68. Thus, dismissal is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an *affirmative defense* that appears clearly on the face of the pleadings. (Emphasis added.) *Id*. A court appropriately sustains the peremptory exception of no cause of action only

8

when, conceding the correctness of the well-pleaded facts, the plaintiff has not stated a claim for which he can receive legal remedy under the applicable substantive law. *Id.*

An appellate court's review of a trial court's ruling sustaining an exception of no cause of action is *de novo* because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. *Grayson v. Gulledge*, 55,214 (La. App. 2 Cir. 9/27/23), 371 So. 3d 1133, *writ denied*, 23-01437 (La. 1/10/24), 376 So. 3d 847.

The existence of an affirmative defense, the immunity provided by La. R.S. 29:771(B)(2)(c)(i), appears clearly on the face of the petition. Ellis alleged that the treatment by Dr. Mai occurred in June of 2021. Ellis concedes in her appellate brief that the declaration of a public health emergency was in effect at the time. This would have triggered the immunity provision of La. R.S. 29:771(B)(2)(c)(i). Furthermore, Ellis concedes in her appellate brief that there was no allegation of gross negligence or willful misconduct in the petition. Under these circumstances, we conclude that the trial court did not err in sustaining the exception of no cause of action.

When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. La. C.C.P. art. 934. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to

9

comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed. *Id.*

Although Ellis has not requested on appeal that she be given the opportunity to amend her petition to remove the grounds of the exception, she did so in her memorandum in opposition to the exception that was filed at the trial court. Accordingly, we remand this matter to the trial court to grant Ellis leave to amend her petition to state a cause of action.

## CONCLUSION

At Ellis's cost, the judgment granting the exception of no cause of action is affirmed and the matter is remanded to the trial court for further proceedings.

AFFIRMED; REMANDED.

10