# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 15-742

DANNY CASTILLE, ET UX.

VERSUS

JONATHAN BLUM, ET AL.

**\*\*\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## FIFTEENTH JUDICIAL DISTRICT COURT
## PARISH OF ACADIA, NO. 2012-10736-A
## HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

## DAVID KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, Jimmie C. Peters, James T. Genovese, and David Kent Savoie, Judges.

**GENOVESE, J., dissents and assigns written reasons.**

**REVERSED.**

**Stephen R. Barry**
**Barry & Co., LLC**
**405 West Main Street**
**Lafayette, Louisiana 70501**
**(337) 237-2889**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Danny Castille and Dawn Castille**

**Russell Zaunbrecher**
**Edwards Stefanski & Zaunbrecher**
**Post Office Drawer 730**
**Crowley, Louisiana 70527-0730**
**(337) 783-7000**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Danny Castille and Dawn Castille**

**Alan J. Yacoubian**
**Neal J. Favret**
**Johnson, Yacoubian & Paysse**
**701 Poydras Street, Suite 4700**
**New Orleans, Louisiana 70139**
**(504) 528-3001**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Certain Underwriters at Lloyd's, London**

**Sean P. Rabalais**
**Casler, Bordelon & Lawler**
**11550 Newcastle Avenue, Suite 200**
**Baton Rouge, Louisiana 70816**
**(225) 663-5564**
**ATTORNEY FOR DEFENDANTS/APPELLEES:**
**Progressive Security Insurance Company, Jonathan Blum,**
**and Jonathan Blum Plumbing & Excavation**

**Terri M. Collins**
**Carl W. Robicheaux**
**Skylar J. Comeaux**
**Robicheaux & Collins**
**2014 West Pinhook Road, Suite 503**
**Lafayette, Louisiana 70508**
**(337) 235-7888**
**ATTORNEY FOR DEFENDANT/APPELLEE:**
**Zurich American Insurance Company**

**Richard F. King**
**Jennifer L. Simmons**
**Galloway, Johnson, Tompkins, Burr & Smith**
**701 Poydras Street, 40th Floor, Suite 4040**
**New Orleans, Louisiana 70139**
**(504) 525-6802**
**ATTORNEY FOR INTERVENOR/APPELLEE:**
    **Zurich American Insurance Company**


**Renee S. Melchiode**
**Melchiode, Marks, King, LLC**
**639 Loyola Avenue, Suite 2550**
**New Orleans, Louisiana 70113**
**(504) 336-2880**
**ATTORNEY FOR INTERVENOR/APPELLEE:**
    **Zurich American Insurance Company**

**SAVOIE, Judge.**

Plaintiffs, Danny and Dawn Castille, appeal the trial court's summary judgment dismissing their claims against Defendant, Certain Underwriters at Lloyd's, London ("Certain Underwriters"), on the grounds that no coverage existed under the Uninsured/Underinsured (UM/UIM) provisions of a policy issued to Danny Castille. For the following reasons, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 24, 2011, Plaintiff-Appellant, Danny Castille, was operating a tractor/trailer traveling westbound on Interstate 10 in Kenner, Louisiana. He was travelling directly behind a vehicle operated by Defendant Denise Breaux, and Ms. Breaux was travelling behind a truck operated by Defendant Jonathan Blum. According to Mr. Castille, a ladder in the back of Mr. Blum's truck fell into the path of Ms. Breaux, and as Ms. Breaux attempted to avoid the ladder, a collision occurred between Ms. Breaux's vehicle and Mr. Castille's vehicle.

Danny Castille and his wife Dawn filed suit against Ms. Breaux and her automobile liability insurer, and Mr. Blum and his automobile liability insurer, among others. They later added Certain Underwriters as a defendant, seeking UM/UIM coverage under a surplus lines insurance policy issued to Mr. Castille. Certain Underwriters answered the Castilles' petition admitting the issuance of an insurance policy to Mr. Castille, but averring that there was no UM/UIM coverage.

The policy Certain Underwriters issued to Mr. Castille is a "Bobtail Liability Insurance Policy." "Bobtailing" is a trucking industry term meaning that the tractor is being operated without a trailer attached. *Jurey v. Kemp*, 11-142, 11-143 (La.App. 1 Cir. 9/20/11), 77 So.3d 83. According to Certain Underwriters, because liability coverage was only available when the insured's tractor was

"bobtailing", UM/UIM coverage was also only available when the insured's tractor was "bobtailing." It is undisputed that Mr. Castille's vehicle was <u>not</u> "bobtailing" since a trailer was attached to the tractor.

Certain Underwriters subsequently sought and obtained a summary judgment against the Castilles. The trial court found that the policy did not provide UM/UIM coverage and dismissed the Castilles' claims against Certain Underwriters. The Castilles appealed; however, that appeal was dismissed because the original summary judgment was not certified as a final appealable judgment pursuant to La.Code.Civ.P. art. 1915.[1] Thereafter, the trial court amended the summary judgment and designated it as final and appealable. The Castilles now appeal from the amended judgment and assert the following assignments of error:

    a. The trial court did not apply the proper standard on the Motion for Summary Judgment and in reviewing [Certain] Underwriters' policy.

    b. The trial court erred in not finding that the UM policy provided separate coverage to plaintiff as named insured for his own injuries sustained at the hands of uninsured motorists, to which the liability exclusions did not apply.

    c. The trial court erred when it failed to consider the specific UM policy provisions in determining whether there was insurance coverage, and in failing to apply the unambiguous language of the policy and UM statutes.

    d. The trial court erred when it did not apply well-established standards for policy interpretation and statutory provisions and public policy considerations that require a finding of UM coverage.

## LAW AND DISCUSSION

In their first assignment of error, the Castilles contend that the trial court applied an improper standard when considering the Motion for Summary Judgment and reviewing the policy; however, they do not identify what standard was or

---

[1] Louisiana Third Circuit Court of Appeal Docket Number 15-65

2

should have been applied.  The proper standard to be applied by the trial court in a summary judgment proceeding and the standard of review to be employed by this court is as follows:

> Courts of appeal review summary judgments de novo applying the same analysis as the trial court. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991).  Summary judgment is governed by La.Code Civ.P. arts. 966 and 967.  Article 966 provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense.  Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie*, 98-2821 (La.9/8/99), 744 So.2d 606.

*Berard v. Home State County Mut. Ins. Co.*, 11-1372, p.2 (La.App. 3 Cir. 5/9/12), 89 So.3d 470, 471-72.

Regardless of the standard of review applied by the trial court, on appeal, we conduct a de novo review of the record; and, as such, the Castilles' claim of legal error has no bearing and is without merit.

The Castilles' remaining assignments of error involve the trial court's interpretation of the policy and its finding that language in the *liability* portion of the policy limited UM/UIM coverage to tractors that were "bobtailing."  In reviewing the applicable insurance policy provisions, we are mindful of the following:

> An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.  The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.

Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent.

Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations. . . .

If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law.

*Cadwallader v. Allstate Ins. Co.*, 02-1637, pp. 3-4 (La. 6/27/03), 848 So.2d 577, 580 (citations omitted)(emphasis in original).

In finding that UM/UIM coverage was not available in this case, the trial court relied on Section II of the "Bobtail Liability Insurance Policy." That section is entitled "II-INSURING AGREEMENTS," and defines the coverage provided as follows (emphasis added):

1. GENERAL AGREEMENT

Subject to the conditions, definitions, Limit of Liability set forth in the Declarations, exclusions, and other terms and conditions of this Policy, Underwriters . . .agree[s] to indemnify the Insured for all sums for which the insured is legally liable for Bodily Injury or Property Damage to which this insurance applies (as described in Section II.2)[.]

Section II.2 of the liability portion of the policy states (emphasis added):

4

2. INSURED ACCIDENTS OR LOSSES

This Insurance Policy applies to business and non-business uses of a <u>covered automobile</u>, but only as respects to the tractor unit whilst the tractor unit is not attached to a trailer. [i.e. only in a "bobtailing" situation].

The trial court found that this language, which appears in the liability portion of the policy, also limited UM/UIM coverage to trailers that were bobtailing. The UM/UIM endorsement attached to the policy defines coverage available as follows (emphasis added):[2]

THIS ENDORSEMENT <u>CHANGES</u> THE POLICY, PLEASE READ
IT CAREFULLY.
LOUISIANA LIABILITY UNINSURED MOTORISTS
COVERAGE – BODILY INJURY

For <u>a covered "auto"</u> licensed or principally garaged in, or "garage operations" conducted in Louisiana, this endorsement <u>modifies insurance</u> provided under the following:

BOBTAIL LIABILITY COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

. . . .

A.    Coverage

1. <u>We will pay</u> all sums the "insured" is <u>legally entitled to recover</u> as compensatory damages from the owner or driver of an "uninsured motor vehicle."

As made clear by the underlined portions of the policy above, we first note that liability coverage available under the liability portion of the policy is defined to insure a completely different loss than UM/UIM coverage. Liability coverage

---

[2] The Castilles note in their brief that Certain Underwriters has also taken the position that any UM/UIM insurance otherwise available is limited to "economic-only" coverage, and that there is a dispute over whether the UM/UIM rejection form limiting the coverage was signed by Mr. Castille. They note, as do we, that this issue has not been considered by the trial court, and is not before this court for consideration at this time.

protects the insured from certain amounts "for which the insured is legally liable," whereas UM/UIM coverage protects against uninsured or underinsured persons who are legally obligated to pay certain amounts to the insured. Therefore, the language in the liability section's insuring agreement that limits the applicability of "this insurance" (i.e. the liability insurance) to "covered automobiles" that are "bobtailing" does not affect the UM/UIM coverage defined by the policy.

In fact, the insuring agreement of the liability portion of the policy makes clear that it is "subject to . . . . other terms and conditions" of the policy, and Section IV of the liability policy provides that UM/UIM coverage "will be provided as defined by the attached endorsement" (emphasis added). Therefore, in determining whether UM/UIM coverage is available, we must look to how UM/UIM insurance is defined in the attached endorsement.

The UM/UIM endorsement makes clear that it "changes" the policy. With respect to "covered autos," it modifies coverage to include coverage for "all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'"

A covered auto is defined by the policy as "a land motor vehicle designated in the Declarations Page . . . and designed for travel on public roads, but does not include 'mobile equipment.'" A covered auto is not defined to include only "bobtailing" tractors, and, similarly, the definition of the UM/UIM coverage available is not otherwise limited to "covered autos" that are "bobtailing."

Therefore, we find that the policy affords otherwise available UM/UIM coverage to covered autos, even if they were not "bobtailing" at the time of the accident, and reverse the summary judgment granted in favor of Certain Underwriters.

## <u>CONCLUSION</u>

For the reasons set forth above, the summary judgment granted in favor of Certain Underwriters at Lloyd's London is reversed, with costs of the appeal assessed to Certain Underwriters at Lloyd's London.

**REVERSED**.

DANNY CASTILLE, ET UX.

VERSUS

JONATHAN BLUM, ET AL.


**GENOVESE, J., dissents and assigns the following reasons:**

The majority opinion in this case creates uninsured motorist/underinsured motorist (UM/UIM) coverage where there is none.

The crux of the majority opinion is that the UM/UIM endorsement "changes" the policy. That is a truism insofar as every endorsement "changes" the policy. The change in the policy as a result of the UM/UIM endorsement is that UM/UIM coverage will now be a part of the policy of insurance issued to the insured. It does <u>not</u> change the general insuring agreement relative to the insured's accident or losses.

The policy of insurance in question is a "Bobtail Liability Insurance Policy," and it specifically states, "This Insurance Policy applies to business and non-business uses of a covered automobile, but only as respects to the trailer unit whilst the tractor unit is not attached to a trailer." It is not disputed that a trailer was attached to a tractor unit at the time of the accident in question.

In this case, the insuring agreement is the insurance policy, and UM/UIM coverage is the endorsement. It is akin to the adage of the dog and the tail. Here, the insurance policy is the dog, and the UM/UIM endorsement is the tail. As stated in the proverb, the dog wags the tail; the tail does not wag the dog. There is

nothing in the endorsement which changes, much less overrides, the clear and unambiguous langauge in the general insuring agreement which only affords coverage when the tractor unit is not attached to a trailer.

The Bobtail Liability Insurance Policy, under the heading "**INSURING AGREEMENTS**[,]" contains a provision addressing "**INSURED ACCIDENTS OR LOSSES**" which provides: "This Insurance Policy applies to business and non-business uses of a covered automobile, but only as respects to the tractor unit whilst the tractor unit is not attached to a trailer." The policy also includes, as a "**LIMITATION[] ON UNDERWRITERS' LIABILITY**[,]" that its "**liability to the Insured, if any, shall be limited**[,]" and it includes UM/UIM coverage which "will be provided as defined in the attached endorsement form(s)." Finally, the UM/UIM endorsement to the policy states, in pertinent part, that "[w]ith respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement."

The definition of an "uninsured motor vehicle" contained within the UM/UIM endorsement does not modify or negate what constitutes a covered accident or loss from the use of "a covered automobile" under the policy. To the contrary, the UM/UIM provision referenced by the Castilles serves only to define what constitutes an "uninsured motor vehicle[,]" and it does not eliminate what is set forth in the Insuring Agreement portion of the policy. That portion of the policy remains unmodified and, by its express terms, affords coverage for "a covered automobile" only if it is not "bobtailing."

In conclusion, the Bobtail Liability Insurance Policy provides coverage for an accident or loss arising from the use of a covered automobile if the tractor is not attached to a trailer. The definition of an uninsured motor vehicle under the UM/UIM provisions of the policy does not modify or "change" this policy

2

provision as proclaimed in the majority opinion. Thus, the policy's Insuring Agreements' general provision relative to bobtailing remains as written and governs the UM/UIM provisions of the policy. Because Mr. Castille was operating a tractor with a trailer attached when the accident occurred, the claims of the Castilles do not come within the ambit of the policy's UM/UIM coverage, and Certain Underwriters is entitled to judgment as a matter of law.

I respectfully dissent from the majority opinion and would affirm the trial court judgment.