STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 16-622


CYNTHIA BENNETT

VERSUS

SAMANTHA BROWN, ET AL.



**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2014-3111
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of John D. Saunders, Billy Howard Ezell, and D. Kent Savoie, Judges.


**AFFIRMED.**

**Roy S. Halcomb, Jr.**
**429 Murray Street, Suite 3 (71301)**
**P. O. Box 1311**
**Alexandria, LA 71309-1311**
**(318) 487-4589**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Cynthia Bennett**

**Matthew J. Ungarino**
**David I. Bordelon**
**Ungarino & Eckert, LLC**
**3850 N. Causeway Blvd.**
**Lakeway Two,  Suite 1280**
**Metairie, LA 70002**
**(504) 836-7531**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Tower National Insurance Company**

**SAVOIE, Judge.**

In this insurance coverage dispute, at issue is whether a "garage policy" issued to a car dealership provides uninsured motorist coverage and/or medical payments coverage to the Plaintiff for damages she sustained in an auto accident while she was driving a vehicle she had borrowed from the dealership. For the following reasons, we affirm the trial court's summary judgment finding that neither type of coverage was available to Plaintiff and its dismissal of Plaintiff's claims against the insurer.

## FACTUAL AND PROCEDURAL BACKGROUND

Cynthia Bennett and Samantha Brown were involved in an auto accident on I-210 in Lake Charles, Louisiana, on August 10, 2013. Ms. Bennett, the Plaintiff herein, alleges that Ms. Brown was at fault and that she suffered injuries as a result of the accident.

At the time of the accident, Ms. Bennett was driving a vehicle that she borrowed from Service Chevrolet Cadillac, hereinafter Service Chevrolet, in Lafayette, Louisiana, while her vehicle was being repaired. Tower National Insurance Company, hereinafter Tower, had issued a "garage policy" to Service Chevrolet, under which the vehicle driven by Ms. Bennett was a "covered auto" as defined by the policy.

Ms. Brown had an auto liability policy issued from USAA. Ms. Bennett had a personal automobile policy with Allstate that provided uninsured motorist (UM) coverage. After suit was filed, Ms. Bennett settled with both Allstate and USAA, but continued to pursue Tower for the remainder of her damages under the UM and medical payments coverage under provisions of Tower's "garage policy" issued to Service Chevrolet.

Tower filed a Motion for Summary Judgment on October 5, 2015, arguing that Ms. Bennett was not considered an "insured" under the liability portion of the Tower policy because Ms. Bennett was insured by her own policy with Allstate, and

therefore Ms. Bennett was also not an insured for purposes of UM coverage. The trial court agreed with Tower, and dismissed Ms. Bennett's claims against it.

Ms. Bennett appeals. She argues that the policy's exclusion of insured customers of Service Chevrolet from liability coverage violates La.R.S. 32:900(B)(2), which requires liability coverage for permissive drivers. Therefore, according to Ms. Bennett, because she should be considered as an "insured" for liability purposes, the policy also affords her with UM coverage in accordance with La.R.S. 22:1295(1)(a)(1). Alternatively, Ms. Bennett argues that the policy is ambiguous as to who is an "insured" for purposes of UM coverage, and therefore summary judgment was inappropriate. In addition, she argues that medical payments coverage was available to her under the policy.

**STANDARD OF REVIEW:**

Louisiana Code of Civil Procedure Article 9662 (A)(2) explains that the "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination" of actions. Further, "[t]he procedure is favored and shall be construed to accomplish these ends." *Id*. A summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

Although the moving party bears the burden of proof on the motion for summary judgment, the movant is not required to negate all essential elements of the adverse party's claim, action or defense if he or she will not bear the burden of proof at trial on the matter at issue. La.Code Civ.P. art. 966(C)(2). Rather, the movant is required "to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. In turn, if the adverse party does not produce sufficient factual support to establish that he or she will be able to satisfy his or her evidentiary burden of proof at trial, there is no genuine issue of material fact. *Id*. On review, an appellate court considers a summary judgment *de novo*, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Reynolds v. Bordelon*, 14-2371, p. 3 (La.6/30/15), 172 So.3d 607, 610.

2

*Blanks v. Entergy Gulf States La., LLC*, 15-1094, pp. 3-4 (La.App. 3 Cir. 4/6/16), 189 So.3d 599, 601 (footnote omitted).[1]

## UM COVERAGE

In reviewing the Tower insurance policy provisions, we keep in mind the following:

> An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judiciary's role in interpreting contracts is to ascertain the common intent of the parties to the contract.
>
> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent.
>
> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations . . . .
>
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law.

*Cadwallader v. Allstate Ins. Co.*, 02-1637, pp. 3-4 (La. 6/27/03), 848 So.2d. 577, 58 (citations omitted; emphasis in original).

---

[1] As in *Blanks*, *Id.*, we note that:

> While Article 966 was amended by 2015 La. Acts No. 422, § 1, and its provisions became effective on January 1, 2016, we consider this matter under the provisions of the Louisiana Code of Civil Procedure as they existed at the time of the trial court's consideration. *See* 2015 La.Acts. No. 422, § 2 (providing that: "The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act.").

The "Garage Coverage Form Declarations" page of the Tower policy states: "This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those 'autos'[2] shown as covered 'autos.'" A charge for a premium is reflected on the declarations page in the columns for liability coverage, UM coverage, and med pay coverage. Liability and med pay coverage apply to "Any 'auto,'" and UM coverage applies to "[o]nly those autos you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage."

Section II of the "Garage Coverage Form," entitled "Liability Coverage," states as follows:

A. Coverage
  . . . .

    2. "Garage Operations" – Covered "Autos"

       We will pay all sums an "insured"[3] legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos".
       . . . .

    3. Who is An Insured

      a. The following are "insureds" for covered "autos"
        . . . .

        (2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except
         . . . .

        (d) Your customers. However, if a customer of yours:

          (i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

---

[2] "Auto" is defined as "a land motor vehicle, 'trailer' or semitrailer"
[3] "Insured" is defined by the policy as "any person or organization qualifying as an insured in the Who Is an Insured provision of the applicable coverage."

4

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of insurance.

There is no coverage form, or other policy provisions, specifically defining the UM coverage available under the policy, other than the reflection on the declarations page that UM coverage in the amount of $50,000.00 is provided by the Tower policy.

The parties do not dispute that the vehicle driven by Ms. Bennett was a "covered auto" under the policy, but rather only whether Ms. Bennett is an "insured" for purposes of UM coverage. Ms. Bennett argues that, because the policy does not specifically define who is an "insured" for UM coverage, the policy is ambiguous, and summary judgment in favor of Tower was inappropriate. However, the Louisiana Supreme Court has held that "a person who is not insured for liability purposes cannot be considered an insured for UM purposes[,]" noting that "UM insurance follows the person rather than the vehicle[.]" *Filipski v. Imperial Fire & Cas. Ins. Co.*, 09-1013, pp. 4-5 (La. 12/1/09), 25 So.3d 742, 745. Therefore, if Ms. Bennett is not an insured for liability coverage, she is not an insured for UM coverage.[4]

It is undisputed that Ms. Bennett had other insurance available to her in the amounts required by Louisiana law. Therefore, Ms. Bennett is not an "insured" for either liability coverage, or for UM coverage, under the policy language. However, Ms. Bennett argues that the policy's exclusion of permissive drivers such as herself from liability coverage violates La.R.S. 32:900(B)(2), which provides that a "Motor Vehicle Liability Policy"

---

[4] We note that Ms. Bennett cites to *Castille v. Blum*, 15-742 (La.App. 3 Cir. 3/10/16), 188 So.3d 362, *writ denied,* 16-706 (La. 6/17/16), 192 So.3d 768, wherein this court held that the liability portion of a policy limiting coverage to tractors that were "bobtailing" did not limit UM/UIM coverage to drivers of tractors that were "bobtailing." However, that case is distinguishable as it did not involve a question as to whether the driver was an *insured* under the policy.

shall insure the person named therein and any other person, as insured, using any such motor vehicle . . . with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle . . . subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows[.]

This same issue was addressed in *Alexander v. Cornett*, 42,147 (La.App. 2 Cir. 7/11/07), 961 So.2d 622, *writ denied*, 07-1681 (La. 11/2/07), 966 So.2d 603. In holding that policy language excluding customers with insurance in the statutorily required minimum amount from the definition of insured under a "garage policy" did not violate public policy or La.RS. 32:900(B)(2), the court stated:

> The correct rule is that a statutory omnibus clause such as [La.]R.S. 32:900(B)(2) supercedes only conflicting insurance policy provisions.
>
> . . . .
>
> [In *Marshall v. Seago*, 41,138 (La.App. 2 Cir. 6/28/06), 935 So.2d 752,] [w]e noted that insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. The provision in question does not conflict with La. R.S. 32:900(B)(2) because it provides liability coverage when the customer's insurance is inadequate to satisfy the minimum requirements of the statute. Accordingly, we affirmed the judgment dismissing [the insurer] from the suit because Seago was not an insured under the policy.
>
> This same policy definition was also upheld in *Savana v. Certain Interested Underwriters at Lloyd's London*, 2001-2450 (La.App. 1 Cir. 7/2/02), 825 So.2d 1242; *Baker v. Kenny*, 99-2950 (La.App. 4 Cir. 5/3/00), 767 So.2d 711, *writ denied*, 2000-2153 (La. 10/13/00), 771 So.2d 650; and, *Gambino v. Lamulle*, 97-2798 (La.App. 4 Cir. 6/10/98), 715 So.2d 574.
>
> Unlike *Green [v. Bailey*, 29,759 (La.App. 2 Cir. 8/20/97), 698 So.2d 715], in which this court held that a statutorily authorized "named driver exclusion" was not in conflict with Louisiana's compulsory insurance law, *Goodwin [v. Western Heritage Ins. Co.*, 38,836 (La.App. 2 Cir. 8/18/04), 880 So.2d 958], *Marshall*, [935 So.2d 752], *Savana*, [825 So.2d 1242] and the other cases cited above hold that the same omnibus clause that is in the State National policy in this case does not conflict with, but instead complies with, the minimum requirements of La. R.S. 32:900(B)(2). Therefore, since the State National omnibus clause offers no less than what is required by the statutory omnibus clause, it is neither an exception nor an exclusion to the statutory omnibus clause.

6

Accordingly, we find no reason to conclude that the statutory omnibus clause somehow overrides the policy's omnibus clause in this case that meets the statutory requirements[.]

*Id.* at 629-630.

We agree with the *Alexander* court, and find that the Tower policy's exclusion of certain insured customers from the definition of "insured" does not violate La.R.S. 32:900(B)(2) or public policy. We therefore affirm the trial court's finding that Ms. Bennett is not entitled to UM coverage under the Tower policy.

## MED PAY COVERAGE

Ms. Bennett also argues on appeal that the Tower policy provides her with medical payments coverage. The "Medical Payments Coverage" endorsement of the Tower policy states:

A. Coverage

We will pay reasonable medical . . . expenses to or for each person who sustains "bodily injury" to which this coverage applies, caused by an "accident" and resulting from:
. . . .

(2) All operations necessary or incidental to a garage business.
. . . .

B. Exclusions

This insurance does not apply to:

(1) "Bodily Injury" resulting from the maintenance or use of any auto.
. . . .

(4) "Bodily Injury" to any "insured"

Ms. Bennett asserts that because she is seeking *medical expenses* for the treatment of bodily injury, and not seeking *bodily injury*, that the exclusion does not apply. The argument has no merit, as the policy clearly does not provide coverage for the payment of medical expenses to persons sustaining "bodily injury" resulting from the use of an auto. There is no question that Ms. Bennett sustained her alleged bodily injuries while using an auto, and therefore the med pay coverage is inapplicable. We

7

likewise find no merit in Ms. Bennett's argument that the exclusion for bodily injury resulting from the use of an auto is inconsistent with the coverage afforded.

## CONCLUSION

For the reasons stated above, the trial court's dismissal of Ms. Bennett's claims against Tower is affirmed. Costs of this appeal are assessed to Appellant, Cynthia Bennett.

**AFFIRMED.**